United States Court of Appeals,
Fifth Circuit.

No. 92-4437.

Helen LOCKART, et al., Plaintiffs,

Helen Lockart and Howard Glen Sullivan, Plaintiffs-Appellants,

and

Transportation Insurance Co., Intervenor-Appellant,

v.

KOBE STEEL LTD. CONSTRUCTION MACHINERY DIV., et al., Defendants,

Kobelco America, Inc., Defendant-Appellee.

Howard Glen SULLIVAN, et al., Plaintiffs,

Howard Glen SULLIVAN, Plaintiff-Appellant,

v.

KOBE STEEL LTD. CONSTRUCTION MACHINERY DIVISION, et al., Defendants,

Kobelco America, Inc., Defendant-Appellee.

May 6, 1993.

Appeal from the United States District Court for the Western District of Louisiana.

Before WISDOM, JOLLY, and DEMOSS, Circuit Judges.

WISDOM, Circuit Judge:

This case involves an interpretation of the revised Louisiana Products Liability Act (LPLA), R.S. 9:2800.51 et seq. and in particular the meaning of "reasonably anticipated use" in 9:2800.54.

The district judge granted the defendant's motion for summary judgment. We AFFIRM.

I.

On March 19, 1990, Howard Sullivan and Jerry Dixon, both employed by Louisiana Industries, Inc. at its Perryville site, attempted to repair the bottom of a steel pontoon. They used a Kobelco hydraulic excavator to suspend the pontoon, while they worked beneath it. They rigged

this by looping a chain around the teeth of the excavator's bucket[1], and the pontoon was suspended from this chain. Unfortunately, the chain slipped off the bucket, and the pontoon fell on the men, killing Dixon and injuring Sullivan.

Sullivan and his wife and Dixon's mother filed separate suits in state court against Kobelco and Louisiana Industries and its insurer under the Louisiana Products Liability Act[2]. The actions were removed and consolidated, and Louisiana Industries and its insurer were dismissed without opposition. The insurer subsequently intervened to collect workers compensation benefits paid to or on behalf of Dixon and Sullivan. Kobelco sought summary judgment on the product liability claims which was granted on February 20, 1992. This appeal followed.

## II.

Summary judgment is appropriate when there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law.[3] We review a grant of summary judgment de novo and may affirm "regardless of the correctness of the district court's rulings, when we find in the record an adequate, independent basis for that result"[4].

## III.

The plaintiffs raise two issues on this appeal. They argue that the district court erred in interpreting the Products Liability Act, in particular the meaning of "reasonably anticipated use". They also contend that the defendant did not meet its burden of proof that the plaintiff's use of the product was not reasonably anticipated.

A. *Interpreting the Products Liability Act*

The relevant section of the Products Liability Act is La.R.S. 9:2800.54 which provides:

---

[1]The bucket was not the original bucket manufactured by Kobelco but was a replacement made by an unidentified manufacturer.

[2]La.R.S. 9:2800.51.

[3]Fed.R.Civ.P. 56(c). *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). *Celotex Corp. v. Catrett,* 477 U.S. 317, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986).

[4]*Degan v. Ford Motor Co.,* 869 F.2d 889, 892 (5th Cir.1989).

A. The manufacturer of a product shall be liable to a claimant for damage proximately caused by a characteristic of the product that renders the product unreasonably dangerous when such damage arose from a reasonably anticipated use of the product by the claimant or another person or entity.

B. A product is unreasonably dangerous if and only if:

(1) The product is unreasonably dangerous in construction or composition as provided in R.S. 9:2800.55;

(2) The product is unreasonably dangerous in design as provided in R.S. 9:2800.56;

(3) The product is unreasonably dangerous because an adequate warning about the product has not been provided as provided in R.S. 9:2800.57;

(4) The product is unreasonably dangerous because it does not conform to an express warranty of the manufacturer about the product as provided in R.S. 9:2800.58.

C. The characteristic of the product that renders it unreasonably dangerous under R.S. 9:2800.55 must exist at the time the product left the control of its manufacturer. The characteristic of the product that renders it unreasonably dangerous under R.S. 9:2800.56 or R.S. 9:2800.57 must exist at the time the product left the control of its manufacturer or result from a reasonably anticipated alteration or modification of the product.

D. The claimant has the burden of proving the elements of Subsections A, B and C of this Section.

The defendants suggest that this section creates a two-step inquiry. One need reach the question of whether the product is unreasonably dangerous only if the use is reasonably anticipated. In this case, however, since we hold that the use was not reasonably anticipated because under the circumstances an adequate warning was provided, our analysis extends to the warning.

In the operators manual, as is seen in the diagram below, item number 17 states: "Never lift a load from the bucket teeth". An illustration of a load being lifted by the bucket teeth with an "X" through the diagram is directly underneath this warning. This warning is unequivocal. The plaintiffs assert therefore that it must be a reasonably anticipated use because Kobelco specifically warned against it. In other words, Kobelco is to be hoist by its own petard.

CA (93) 2027, SIZE-24 PICAS, TYPE-PDI

The plaintiffs, however, have incorrectly interpreted the term "reasonably anticipated use". Reasonably anticipated use is defined in R.S. 9:2800.53(7) as "a use or handling of a product that the product's manufacturer should reasonably expect of an ordinary person in the same or similar circumstances". The Louisiana Appellate Court has recently held in *Daigle v. Audi of America* that

"this definition is narrower in scope than its pre-LPLA counterpart, "normal use', which included all reasonably foreseeable uses and misuses of the product"[5]. This more restrictive scope of liability was to avoid prior confusion and because virtually any conceivable use is foreseeable.[6] For example, using a soft drink bottle as a hammer or attempting to drive an automobile across water are foreseeable but not reasonable.[7] The standard is objective, thus "reasonably anticipated use" refers to the uses the manufacturer "should reasonably expect of an ordinary consumer".[8]

When a manufacturer expressly warns against using the product in a certain way in clear and direct language accompanied by an easy to understand pictogram, it is expected that an ordinary consumer would not use the product in contravention of the express warning. Here, however, the owners manual and thus the warning probably never reached the ultimate users.

In a case arising from Mississippi, this Court has held that in addition to a warning in a manual being inadequate because it was not clear, it was also inadequate because placing the warning in the manual as opposed to placing it on the product would not reasonably bring the warning to the attention of the users of the product.[9] This result was based on an interpretation of § 388 Restatement (Second) of Torts. As an *Erie* court, however, we must rely on Louisiana law. In *Broussard v. Continental Oil Co.*[10], the Louisiana Appellate Court confronted this same problem. Broussard, an employee of Continental Oil, was injured when his power drill sparked a natural gas explosion, and the court inquired whether Black & Decker's warning in the owner's manual was sufficient or should Black & Decker have placed the warning on the drill itself. The court remarked that it must consider not only the warning relating to the injury that occurred here but the other

---

[5]598 So.2d 1304, 1307 (La.App. 3d Cir.1992).

[6]John Kennedy, *A Primer on the Louisiana Products Liability Act,* 49 La.L.Rev. 565 (1989). John Kennedy, along with Prof. H. Alston Johnson III, drafted the Act.

[7]Kennedy at 586.

[8]*Id.*

[9]*Gordon v. Niagara Mach. & Tool Works,* 574 F.2d 1182 (5th Cir.1978).

[10]433 So.2d 354 (La.App. 3d Cir.1983).

warnings as well. In that case, at least ten warnings were deemed worthy of being placed on the drill itself. The court, assuming arguendo that only ten were necessary, noted several deficiencies in any scheme for putting them all on the drill. "As a practical matter, the effect of putting at least ten warnings on the drill would decrease the effectiveness of all of the warnings. A consumer would have the tendency to read none of the warnings if the surface of the drill became cluttered with the warnings ... we fear that an effort to tell all about each hazard is not practical either from a point of view of availability of space or of effectiveness."[11] Although this case appeared before the revisions to the LPLA, "[The definition of adequate warning] was not intended to and does not change prior Louisiana law."[12]

With regard to the excavator in this case, there are many warnings which are as worthy of display as the admonition not to lift a load from the bucket teeth. The preceding warning for example instructs the operator what to do in the event that the excavator comes into contact with live power lines. This warning to remain in one's seat if at all possible is at least as important as the bucket teeth one. With a piece of machinery as complex as an excavator, there are numerous warnings which might seem to be required to be placed on the equipment, but as the *Broussard* court stated, it is simply impractical to place all these on the product rather than in a manual. Further even if the warning had been placed on the bucket scoop, it would have made no difference in this case, because the original scoop made by Kobelco was replaced with a scoop made by another manufacturer. This would be a different case if the plaintiffs had presented evidence that despite the warnings, Kobelco should have been aware that operators were using the excavator in contravention of certain warnings. No evidence suggests such a scenario.

Even if the warning did not reach the users, the LPLA speaks of "an ordinary person in same or similar circumstances".[13] These users had many years experience mining and working with heavy

---

[11]*Broussard* at 358.

[12]Kennedy at 615 and n 202-03. Kennedy cites *Broussard* in the footnote to the quoted sentence.

[13]*See also* R.S. 9:2800.57 B(2) which sets forth the standard for determining the adequacy of a warning: "The user or handler of the product already knows or reasonably should be expected to

machinery, and both had taken company courses in equipment handling in 1986. The dangers of using the bucket to suspend a heavy pontoon should have been obvious to the ordinary consumer and certainly to experienced workers.

The district court, therefore, did not err in granting a summary judgment based on its holding that Dixon and Sullivan's use of the excavator to suspend the pontoon was not a reasonably anticipated use within the meaning of the Louisiana Products Liability Act.

B. *The Burden of Proof*

Judge Rubin in one of his last opinions and in a products liability context in which the grant of summary judgment for the defendant was affirmed set forth the rules governing the burden of proof:

> The moving party bears the burden of establishing that there are no genuine issues of material fact ... if the crucial issue is one for which the nonmoving party will bear the burden of proof at trial, [the moving party may] merely point out that the evidentiary documents in the record contain insufficient proof concerning an essential element of the nonmoving party's claim or defense. Once the moving party makes that showing, however, the burden shifts to the nonmoving party to show that summary judgment is not appropriate. The nonmoving party cannot discharge that burden by referring to the "mere allegations or denials' of the nonmoving party's pleadings; rather, that party must, either by submitting opposing evidentiary documents or by referring to evidentiary documents already in the record, set out specific facts showing that a genuine issue exists.[14]

The LPLA is clear: the plaintiffs bear the burden of proving at trial that their use was a reasonably anticipated one. Kobelco argued in its motion for summary judgment that because of the warning and the obvious danger, this was not a reasonably anticipated use under the LPLA. The plaintiffs failed to set out specific facts in their motion in opposition to summary judgment. They provided no hard evidence that another warning would have been feasible or that these experienced workers should not have reasonably appreciated the risks involved in suspending the pontoon from the bucket teeth. Since the plaintiffs did not sustain their burden, summary judgment was appropriate.

## IV.

While we acknowledge that summary judgment is not usually appropriate for a products

---

know of the characteristic of the product that may cause damage and the danger of such characteristic."

[14]*Lavespere v. Niagara Machine & Tool Works, Inc.,* 910 F.2d 167, 178 (5th Cir.1990).

liability case[15], in this instance in which the manufacturer provided a clear warning, the product was handled by experienced users, and no hard evidence was offered to rebut these facts, we must AFFIRM the judgment of the district court.

---

[15]*Lavespere* at 78. *See also Fontenot v. Upjohn,* 780 F.2d 1190, 1196 (5th Cir.1986).